IN THE CIRCUIT COURT OF THE
17ᵀᴴ JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

MANHATTAN CAPITAL EQUITIES, INC.

CASE NO. 20-6244

Plaintiff,

vs.

JBTX3 HOLDINGS, LLC, A Limited Liability
Company
and BRIAN SCOTT BLAKEY, individually

Defendants.

_____/

## COMPLAINT

Plaintiff MANHATTAN CAPITAL EQUITIES, INC. by and through undersigned

counsel hereby files this Complaint against Defendants, JBTX3 HOLDINGS, LLC, A Limited

Liability Company and BRIAN SCOTT BLAKEY, individually, and in support thereof, states as

follows:

## JURISDICTION, VENUE AND PARTIES

1.     This is a Complaint seeking damages in excess of $30,000 and is within this Court's

jurisdiction.

2.     Venue is proper in this Court because the parties hereto expressly agreed to such

venue in paragraph ten (10) of the Consulting Agreement attached hereto as **Exhibit "A,"** as

follows:

"Each party (i) agrees that any dispute or action arising out of or in connection with
this Agreement shall be brought solely in the State of Florida, Broward County or in
the United States District Court for the Southern District of Florida, (ii) hereby

consents to the jurisdiction of the courts of the State of Florida and the United States District Court for the Southern District of Florida...."

3.    Plaintiff is a Florida Corporation with a principal place of business in Broward County, Florida.

4.    Defendant JBTX3 HOLDINGS, LLC, is, upon information and belief, a Texas Limited Liability Company.

5.    Defendant BRIAN SCOTT BLAKEY is, upon information and belief, a citizen and resident of the State of Texas.

6.    Defendant BRIAN SCOTT BLAKEY is over the age of 18, and, upon information and belief, is otherwise *sui juris.*

7.    Pursuant to paragraph ten (10) of the Consulting Agreement ("Agreement") attached hereto as **Exhibit "A,"** the Defendants have consented to the personal jurisdiction of this Court.

8.    In addition, the attached Agreement falls within the statutory provisions of §685.101(1) Florida Statutes, thereby conferring personal jurisdiction upon this Court.

9.    Furthermore, the Defendants have established sufficient minimal contacts with the State of Florida to warrant personal jurisdiction in that:

> A) the tortious act at issue is the filing of a false complaint by the Defendant(s) alleging that the Plaintiff engaged in "unauthorized" bank transaction(s);
>
> B) the false complaint was received by the Plaintiff's Bank in Florida;
>
> C) the statement was therefore "published" in Florida; and
>
> D) the tortious act therefore occurred within Florida. *Internet Solutions Corp. v. Marshall,* 39 So.3d 1201 (Fla. 2010).

2

## GENERAL ALLEGATIONS

10. Defendant Brian Scott Blakey is a Member of Defendant JBTX3 Holdings, LLC.

11. On or about January 16, 2020, Defendant Blakey, along with fellow Member Bobby Johnson, executed a six-month consulting agreement ("Agreement") between Defendant JBTX3 Holdings, LLC and Plaintiff Manhattan Capital Equities, Inc., a copy of which is attached hereto as **Exhibit "A."**

12. Pursuant to the Agreement, Defendant Blakey voluntarily transferred, via bank wire, the sum of $5,000.00 to the Plaintiff.

13. Thereafter, on March 19, 2020 at 12:35 pm, Defendant Blakey wrote an email to the Plaintiff indicating that he and his partner had decided to "step back and reassess" [their financial situation] and, as a result, sought a refund of the $5,000.00 previously paid to the Plaintiff. A copy of this email is included in the email chain attached hereto as **Composite Exhibit "B."**

14. The Plaintiff performed pursuant to the Agreement and the Agreement had not yet expired. Therefore, the Defendants were not entitled to a refund.

15. However, in the spirit of cooperation, the Plaintiff agreed to a refund of the entire $5,000.00, seeking only a period of thirty (30) days to process the request. Plaintiff's promise to refund the money is included in the email chain attached hereto as **Composite Exhibit "B."**

16. Unbeknownst to the Plaintiff, however, on March 18, 2020, the day *before* the refund was requested, Defendant Blakey filed a false complaint with the Defendants' bank alleging that the Plaintiff had taken money therefrom without "authorization."

17. At the time that he filed the false complaint, Defendant Blakey knew that allegations set forth therein were not true.

3

18.     As a direct and proximate result of the Defendants' defamatory claim(s), $5,000.00 was removed from the Plaintiff's bank account, the account was immediately frozen and, thereafter, the account was closed. A copy of correspondence received from Wells Fargo (Plaintiff's Bank) indicating the allegation of an "unauthorized" transfer and the resulting freeze and closure is attached hereto as **Plaintiff's Exhibit "C."**

19.     The defamatory claim(s) of the Defendants have caused the Plaintiff great harm in terms of its reputation and ability to continue to operate its business.

20.     Many of the Plaintiff's Business transactions involve an element of trust that has been irreversibly damaged due to the defamatory claim(s) of the Defendants.

21.     The true extent of harm caused to the Plaintiff is difficult to predict at this time. However, at present, Wells Fargo has refused to reopen the Plaintiff's Bank Account, and this continues to impact the Plaintiff's standing in the community and in its trade and profession.

## COUNT I
## DEFAMATION - LIBEL

22.     Plaintiff adopts and incorporates the allegations contained in paragraphs 1 through 21 above as if fully set forth herein.

23.     One or more of the Defendants made a WRITTEN false and defamatory statement, to wit: that the Plaintiff had engaged in an "unauthorized" "transfer" regarding the $5,000.00 that Defendants had voluntarily deposited into the Plaintiff's bank account.

24.     This false and defamatory statement was received by Wells Fargo at its location in Florida (i.e. "published").

25.     On or more of the Defendants made the false and defamatory statement with actual knowledge of its falsity or with reckless disregard for the truth thereof.

4

26.     Plaintiff has suffered damages as a direct and proximate result of the false and defamatory statement in an amount to be proven at trial in excess of $30,000.00.

27.     WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against the Defendants for damages and costs, including attorney's fees, and such other and further relief as this Court deems just, equitable, and proper.

## COUNT II
## DEFAMATION – SLANDER

28.     Plaintiff adopts and incorporates the allegations contained in paragraphs 1 through 21 above as if fully set forth herein.

29.     Upon information and belief, one or more of the Defendants made an ORAL false and defamatory statement, to wit: that the Plaintiff had engaged in an "unauthorized" "transfer" regarding the $5,000.00 that Defendants had voluntarily deposited into the Plaintiff's bank account.

30.     This false and defamatory statement was received by Wells Fargo at its location in Florida (i.e. "published").

31.     One or more of the Defendants made the false and defamatory statement with actual knowledge of its falsity or with reckless disregard for the truth thereof.

32.     Plaintiff has suffered damages as a direct and proximate result of the false and defamatory statement in an amount to be proven at trial in excess of $30,000.00.

33.     WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against the Defendants for damages and costs, including attorney's fees, and such other and further relief as this Court deems just, equitable, and proper.

5

## COUNT III
## DEFAMATION -- PER SE

34.     Plaintiff adopts and incorporates the allegations contained in paragraphs 1 through 21 above as if fully set forth herein.

35.     One or more of the Defendants made a WRITTEN false and defamatory statement, to wit: that the Plaintiff had engaged in an "unauthorized" "transfer" regarding the $5,000.00 that Defendants had voluntarily deposited into the Plaintiff's bank account.

36.     This false and defamatory statement was received by Wells Fargo at its location in Florida (i.e. "published").

37.     On or more of the Defendants made the false and defamatory statement with actual knowledge of its falsity or with reckless disregard for the truth thereof.

38.     The false and defamatory statement is such that it tends to subject the Plaintiff to hatred, disgust, ridicule, contempt and/or disgrace.

39.     The false and defamatory statement is such that it tends to injure the Plaintiff in its trade or profession.

40.     The false and defamatory statement is such that it tends to attribute to a person, either conduct, characteristics, or conditions incompatible with the proper exercise of a lawful business, trade or profession.

41.     Plaintiff has suffered damages, which should be presumed if the elements hereinabove are proven, in an amount in excess of $30,000.00.

42.     WHEREFORE, Plaintiff respectfully requests this Court enter a judgment against the Defendants for actual damages and/or punitive damages, costs, including attorney's fees, and such other and further relief as this Court deems just, equitable, and proper.

## ATTORNEYS FEES

43.    Plaintiff is entitled to Attorney's Fees, pursuant to paragraph 11 of the Agreement.

## DEMAND FOR JURY TRIAL

44.    Plaintiff hereby demands a trial by jury as to all issues so triable.

Date: April 13, 2020

Edward M. Shahady, PA

/s/_____
By: Edward M. Shahady
FL Bar # 965952
ed@shahady-law.com;
eservice@shahady-law.com;
Attorney for Plaintiff
7900 Peters Road, Suite B-200
Fort Lauderdale, FL 33324
Telephone: 954-442-1000
Facsimile: 888-574-1262

7

# EXHIBIT A

# Manhattan Capital Equities, Inc.

**VALID FROM: January 12TH, 2020**

## Consulting Agreement

**THIS AGREEMENT** is made on this date January 12TH, 2020, duly signed and totally binding on all parties mentioned hereunder:

### CONSULTING AGREEMENT

This Agreement is made this 12TH day January, 2020 is between ("Client") JBTX3 HOLDINGS, LLC. #83-1948196 with a principal place of business located at 6949 Katie Corral Drive, Fort Worth, TX. 76126 and MANHATTAN CAPITAL EQUITIES, INC. ("Consultants"), with principal places of business at; 5100 DuPont Blvd. STE: 4-I, Fort Lauderdale, Florida 33308 (MANCAP).

In consideration of the mutual promises herein contained, Client and Consultants agree as follows:

1.      **Engagement.** Client hereby engages the Consultant as an independent contractor to perform the services set forth herein, including Exhibit A, and the Consultant hereby accepts such engagement under the terms and conditions of this Agreement.

2.      **Duties, Term, and Compensation.** The scope and terms of Consultant's engagement, including the specific duties, term of engagement (hereinafter referred to as the "Services"), and payment hereof, are as described in Exhibit A, which may be amended in writing from time to time, or supplemented with subsequent estimates for services to be rendered by the Consultants and agreed to by the Client, collectively incorporated here by reference. Compensation for the Services performed hereunder is set forth in Exhibit A.

3.      **Expense Reimbursement.** Consultants are not entitled to be reimbursed for ordinary expenses incurred while performing the Services.

4.      **Insurance.** Clients shall not provide insurance coverage to Consultants.

5.      **Term to this Agreement.** The term to this Agreement shall be for a period of six months, commencing from the date of this Agreement, set forth above.

6.      **Independent Contractor.** This Agreement shall not render the Consultants an employees, partner, agent of, or joint venture with the Client for any purpose. The Consultants are and will remain as independent contractors in their relationship to the Client. The Client shall not be responsible for withholding taxes with respect to the Consultant's compensation hereunder. The Consultants shall have no claim against the Client for vacation pay, sick leave, retirement benefits, social security, worker's

5100 DuPont Blvd. Ste: 4-I, Ft. Lauderdale, Florida 33308
csmithmanhattancapital@gmail.com
csmith@manhattancapitalequities.com
www.manhattancapitalequities.com
954-662-5380 / 954-534-3144

 Manhattan Capital Equities, Inc.

compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

7.      **Taxes**. To the extent Consultants are required to pay any federal, state or local sales, use, and property or value added taxes based on the services provided under this Agreement, the taxes shall be separately billed to Client. Consultant shall not pay any interest or penalties incurred due to late payment or nonpayment of such taxes by Client.

8.      **Contract Changes**. Client and Consultant recognize that: I) Consultant's original cost and time estimates may be too low due to unforeseen events, or to factors unknown to Client or Consultant when this Agreement was made; II) Client may desire a mid-project change in Consultant's services that would add time and cost to the project and possibly inconvenience Consultant, or III) other provisions of this Agreement may be difficult or impossible to carry out due to unforeseen circumstances. If any intended changes or any other events beyond the parties' control require adjustments to this Agreement, the parties shall make a good faith effort to agree on all necessary particulars. Such agreements shall be put in writing, signed by the parties and added to this Agreement.

9.      **Assignment**. Neither party will assign this Agreement, in whole or in part, without the prior written consent of the other party. This Agreement will inure to the benefit of, and be binding upon the parties hereto, together with their respective legal representatives, successors, and assigns, as permitted herein.

10.     **Governing Law and Construction**. This Agreement will be governed by and construed in accordance with the laws of Florida, without regard to the principles of conflicts of law. The language of this Agreement shall be deemed to be the result of negotiation among the parties and their respective counsel and shall not be construed strictly for or against any party. Each party (I) agrees that any dispute or action arising out of or in connection with this Agreement shall be brought solely in the State of Florida, Broward County, or the United States District Court for the Southern District of Florida, (ii) hereby consents to the jurisdiction of the courts of the State of Florida and the United States District Court for the Southern District of Florida, and (iii) agrees that, whenever a party is requested to execute one or more documents evidencing such consent, it shall do so immediately.

11.     **Attorney's Fees**. If any lawsuit, litigation, or action at law or in equity, or action to collect for non-payment is brought by either party to interpret or enforce any of the provisions of this Agreement, then the prevailing party therein shall be entitled to recover all costs and expenses of such action or collection activity, as well as, reasonable attorneys fees and costs which may be fixed by the court or other tier of fact in the same action or in a separate action brought for that purpose. If any part or provision of this Agreement is ever held by a final order or judgment of a court of competent jurisdiction to be invalid or unenforceable, then that particular part or provision shall be stricken and the remaining provisions shall remain in full force and effect.

12.     **Section Headings**. Title and headings of sections of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

13.     **Modification**: Modifications and amendments to this Agreement shall be enforceable only if they are in writing and are signed by authorized representatives of both parties.

5100 DuPont Blvd. Ste: 4-I, Ft. Lauderdale, Florida 33308
csmithmanhattancapital@gmail.com
csmith@manhattancapitalequities.com
www.manhattancapitalequities.com
954-662-5380 / 954-534-3144

 Manhattan Capital Equities, Inc.

14.     **Severability**: If any provision of this Agreement is held invalid, void or unenforceable under any applicable statute or rule of law, it shall to that extent be deemed omitted, and the balance of this Agreement shall be enforceable in accordance with its terms.

15.     **Survival**. Following the expiration or termination of this Agreement, whether by its terms, operation of law, or otherwise, the terms and conditions set forth, as well as any term, provision, or condition required for the interpretation of this Agreement or necessary for the full observation and performance by each party hereto of all rights and obligations arising prior to the date of termination, shall survive such expiration or termination.

16.     **Waiver**: No term or provision of this Agreement shall be deemed waived and no breach excused unless such waiver or consent is in writing and signed by the party claimed to have waived or consented. The waiver by either party of a breach or violation of any provision of this Agreement shall not constitute a waiver of any subsequent or other breach or violation.

17.     **Notices**. All notices and other communications given in connection with this Agreement shall be in writing and shall be deemed given I) When delivered personally to the recipient's address as appearing in the introductory paragraph to this Agreement; ii) Three days after being deposited in the United States mails, postage prepaid to the recipient's address as appearing in the introductory paragraph to this Agreement, or iv) When sent by fax or telex to the last fax or telex number of the recipient known to the party giving notice. Notice is effective upon receipt provided that a duplicate copy of the notice is promptly given by first-class or certified mail or the recipient delivers a written confirmation of receipt. Any party may change its address appearing in the introductory paragraph to this Agreement by giving notice of the change in accordance with this paragraph.

18.     **Force Majeure**. Neither party will be held responsible for any delay or failure in performance of any part of this Agreement to the extent that such delay is caused by events or circumstances beyond the delayed party's reasonable control.

19.     **Complete Agreement**: This Agreement together with the Proposal, any Exhibits or attachments referred to herein constitute the entire agreement between the parties with respect to its subject matter, and supersedes all prior agreements, proposals, negotiations, representations or communications relating to the subject matter. In the event of a conflict between the provisions of the main body of this Agreement and any attached exhibits, appendices or other materials, this Agreement shall take precedence. Both parties acknowledge that they have not been induced to enter into this Agreement by any representations or promises not specifically stated herein.

20.     **Counterparts**. This Agreement may be executed (by original or telecopied signature) in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute but one and the same instrument.

5100 DuPont Blvd. Ste: 4-I, Ft. Lauderdale, Florida 33308
csmithmanhattancapital@gmail.com
csmith@manhattancapitalequities.com
www.manhattancapitalequities.com
954-662-5380 / 954-534-3144



# Manhattan Capital Equities, Inc.

Client

JBTX3 HOLDINGS LLC.

By: (Signature)

Date: 1-16-2020

Mr. BRIAN BLAKEY (Managing Member)

By: (Signature)

Date: 1-16-2020

Mr. BOBBY JOHNSON (MEMBER)

Consultant
MANHATTAN CAPITAL EQUITIES, INC.

By: (Signature)

Date: H8-2020

CHARLES SMITH (Consultant)

5100 DuPont Blvd. Ste: 4-I, Ft. Lauderdale, Florida 33308
csmithmanhattancapital@gmail.com
csmith@manhattancapitalequities.com
www.manhattancapitalequities.com
954-662-5380 / 954-534-3144

MANHATTAN CAPITAL EQUITIES, INC.
&
JBTX3 HOLDINGS, LLC.

Commission Agreement      **EXHIBIT A**      Dated: January 12TH, 2020

**Objectives**: To help assist in Private Investment Loans: Investment Bridge Acquisition (Springhill Suites) and Long-Term Take-Out Loan.

**Consultants shall**: Our team has found & located a preferred lender. Willing to help Make "JBTX3 HOLDINGS" their #1 Priority Source for Bridge & Long-Term Loan Financing.

**Mr. Brian Blakey & Bobby Johnson are the Main Principles :** and we are representing " JBTX3 HOLDINGS" Directly in this Financial Transaction. Once our paperwork is Signed & Deposit Hits. We will setup final calls on the final stipulations for your real estate transaction. With Anticipation of Closing a successful Transaction.

Processing Fee: $5,000.00 this covers due diligence process.

This is a one-time fee that is 100% refundable if we fail to get your Commitment Issued.

Please send (Processing Fee) once the agreement is executed (Banking Instructions Attached)
8.5%
Bridge Loans Terms: 8% to 9% (Interest Only)

Take-Out: (LIBOR) + 2 , not to exceed 5.25%

We can provide Exit Financing from bridge loan so you are able to build your portfolio.

Closing: 10 Days After Final Appraisal Completed.

Once we have your company registered it will make closing bridge loans much faster in the future.

**Earned Fees**: We will deduct our fees at closing. We have a 2% (TWO) Point Commission. TWO (2%) will be deducted at closing. Our Fees are considered earned fees. Have nothing to do with additional lending fees or closing cost.

MANHATTAN CAPITAL EQUITIES, INC.
&
JBTX3 HOLDINGS, LLC.

**Acknowledged and Agreed**

Date: 1-16-2020

Mr. Brian Blakey (Managing Member)
JBTX3 HOLDINGS, LLC.

Date: 1-16-2020

Mr. Bobby Johnson (Member)
JBTX3 HOLDINGS, LLC.

Date: 1-18-2020

Charles Smith, (CEO)
Manhattan Capital Equities, Inc.

# COMPOSITE EXHIBIT B

On Thursday, March 19, 2020, 12:03:41 PM CDT, charles smith <csmith@manhattancapitalequities.com> wrote:

Agreements are for 6 Months. I will have it sent to you within 30 days

**From:** B Blakey <bblake30@yahoo.com>
**Sent:** Thursday, March 19, 2020 1:01 PM
**To:** charles smith <csmith@manhattancapitalequities.com>
**Subject:** Re: SPRING HILL SUITES - QUESTIONS 3-18

Charles,

Thanks.

I appreciate all your efforts. Hopefully we can re-engage again later down the road.

How long do you expect it will take to get us a refund of the funds we sent you?

Brian

On Thursday, March 19, 2020, 11:54:44 AM CDT, charles smith <csmith@manhattancapitalequities.com> wrote:

Sorry Brian,

I didn't hear your voicemail so email work the best. I will let the funding company know and I will let the CFO know the project has been canceled.

Sincerely,

Charles Smith

**From:** B Blakey <bblake30@yahoo.com>
**Sent:** Thursday, March 19, 2020 12:35 PM
**To:** charles smith <csmith@manhattancapitalequities.com>
**Subject:** Re: SPRING HILL SUITES - QUESTIONS 3-18

Chuck -

Glad you're feeling better and back in the land of the living. If you recall from my last voice mail, I said that the deal we were working on has fallen apart and won't be going forward. As a result, the information you requested below will not be forthcoming. Also, I had a meeting with my partner and in the current climate we've decided to step back and reassess. Since our agreement was not finalized with you, we wish to get a refund of the $5000 fee paid to you on 1/17/2020.

Per our consulting agreement with you:

*"This is a one-time fee that is 100% refundable if we fail to get your Commitment issued."*

Regards,

Brian

1

On Wednesday, March 18, 2020, 08:56:44 AM CDT, charles smith <csmith@manhattancapitalequities.com> wrote:

Good Morning Brian,

I did a self quarantine over the last 7 days. I'm back working today. I need answers to the following questions from the lender.

1. Sponsor Attorney Fees
2. Copy of the Furniture Lease amount owed
3. Title company name & cost any money owed?

Sincerely,

Charles Smith
CEO

Manhattan Capital Equities

954-662-5380

csmith@manhattancapitalequities.com

www.manhattancapitalequities.com

2

# EXHIBIT C

DCH58NDTX7 000364
‖յ‖‖ᵢᵢᵢᵢ‖ᵢᵢ‖ᵢᵢᵢᵢᵢ‖‖ᵢᵢ‖‖ᵢᵢᵢᵢ‖‖‖ᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢ‖ᵢᵢᵢ‖ᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢ‖ᵢᵢᵢᵢ‖
MANHATTAN CAPITAL EQUITIES INC
5100 DUPONT BLVD
4-I
FT. LAUDERDALE FL 33308-4332

Subject: Closure of your deposit accounts:

Account number: XXXXXX-XXX6412

Dear Manhattan Capital Equities Inc:

Wells Fargo performs ongoing reviews of its account relationships in connection with the Bank's responsibilities
to manage risks in its banking operations. We recently reviewed your account relationship and, as a result of this
review, we will be closing your above referenced accounts because of one or more money transfers to your
account reported as unauthorized. The accounts are expected to close by 4/1/20.

**Be aware that some circumstances may delay the closure of your accounts.** To learn more, refer below to
"What may delay account closure?"

Please review the following important information to help you prepare for this transition.

### What this means for the accounts listed above as of the date of this letter:

* Deposits will continue to be processed until your account is closed.
    - If you have recurring deposits (for example, your paycheck or pension), please redirect the deposits to a
      non-Wells Fargo account.
* Withdrawals and payments have been blocked.
    - You may no longer access these accounts with your debit card.
    - No new transactions will be authorized. However, we must pay certain transactions that are received for
      processing before your account is closed, even if this creates a negative balance in your account.
         This includes the payment of any previously authorized transactions (for example, debit card
         purchases), but no overdraft fees will be assessed if you do not have sufficient funds in your account.
    - We must also process the reversal of any previously credited deposits that are returned unpaid and
      may assess a returned deposited item fee.
    - Recurring payments you previously established will be declined and checks will be returned unpaid.
      While we will not assess an insufficient funds fee on these transactions, the merchant you attempted to
      pay may assess returned payment fees. Contact these merchants as soon as possible to make other
      payment arrangements.

### What happens to the balance in your accounts when the account is closed?

If the account balance is positive at closure, we will mail a cashier's check payable to you at the address above for
all money due to you.